2023 IL App (4th) 230826

NOS. 4-23-0826, 4-23-0827, 4-23-0828 cons.

FILED
November 27, 2023
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Rock Island County |
| JACOB E. MARTIN, | ) | Nos.   22CF480 |
| Defendant-Appellant. | ) | 23CF316 |
| | ) | 23CF317 |
| | ) | |
| | ) | Honorable |
| | ) | Peter W. Church, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices Cavanagh and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1        These consolidated appeals arise from a pretrial detention order entered in connection with three criminal prosecutions pending against defendant Jacob E. Martin in the circuit court of Rock Island County. The trial court held a detention hearing on September 18, 2023, the effective date of the pretrial release provisions of Public Acts 101-652 and 102-1104 (see Pub. Acts 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023)) after they were upheld as constitutional by the Illinois Supreme Court. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the effective date as September 18, 2023). These provisions are codified in article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), which is commonly

referred to as the Pretrial Fairness Act (Act), including in Illinois Supreme Court Rules 604 and 606 (eff. Sept. 18, 2023) and the notice of appeal forms accompanying those rules. For the reasons that follow, we reverse the trial court's detention order and remand for a new detention hearing consistent with this opinion.

¶ 2                                    I. BACKGROUND

¶ 3            In June 2022, defendant was arrested and charged with possession of a stolen motor vehicle, a Class 2 felony (625 ILCS 5/4-103(a)(1), (b) (West 2022)), and aggravated unlawful use of a weapon, a Class 4 felony (720 ILCS 5/24-1.6(a)(1), (a)(3), (d) (West 2022)), in Rock Island County case No. 22-CF-480. Defendant's bond was set at $30,000; defendant posted the required $3000 bond deposit in July 2022 and was released.

¶ 4            Defendant allegedly committed additional felonies on two dates in August 2022 and one date in September 2022, as well as a domestic violence offense on another date in September 2022, after which he was arrested and charged. The bond set for the new charges was less than $30,000 and concurrent with his bond in case No. 22-CF-480, so he was released in October 2022 on his existing $3000 bond deposit. He allegedly committed yet more felonies on one date in November 2022, two dates in December 2022, and three consecutive dates in March 2023, after which he was arrested again and detained on a no-bond order. The record reflects that 11 prosecutions are now pending against defendant in the trial court, 3 of which are implicated in this appeal: Rock Island County case Nos. 22-CF-480, 23-CF-316, and 23-CF-317. Each of these three cases includes a Class 2 felony charge for possession of a different stolen motor vehicle.

¶ 5            In April 2023, the State filed four felony charges against defendant in case No. 23-CF-316 and three felony charges in case No. 23-CF-317. The trial court held a consolidated preliminary hearing in May 2023 and found probable cause that defendant had committed the

offenses charged in those cases. The court set defendant's bond at $250,000, concurrent in eight of his pending cases, including the three cases implicated in this appeal. Defendant failed to post the required $25,000 bond deposit and has remained in custody ever since.

¶ 6        On September 8, 2023, defendant filed a motion under the Act for reconsideration of the pretrial condition requiring him to post bond. See sections 110-5(e) and 110-7.5(b) of the Code (725 ILCS 5/110-5(e), 110-7.5(b) (West 2022) (providing for a conditions of release hearing for "any person who remains in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security")). On September 14, the State filed a verified petition to deny defendant pretrial release in all eight cases where he had failed to post bond. See *id*. § 110-6.1 (governing denial of pretrial release).

¶ 7        For each of the three cases on appeal, the State's factual basis in support of detention was limited to the facts underlying the charges in that case. In case No. 22-CF-480, the State's verified petition relied on the dangerousness prong, citing defendant's charge of aggravated unlawful use of a weapon as the qualifying offense. See *id*. § 110-6.1(a)(1), (6)(O)(ii). The petition did not address the willful flight prong. In case Nos. 23-CF-316 and 23-CF-317, the State's verified petitions failed to address either the dangerousness or willful flight prongs, referring instead to felonies that defendant committed while on pretrial release for "the instant offense[s]" and citing the section of the Code that governs revocation of pretrial release, as opposed to denial of pretrial release. Compare *id*. § 110-6(a) with *id*. § 110-6.1(a).

¶ 8        The trial court held a consolidated detention hearing on September 18, 2023. The State started with its petition in case No. 22-CF-480, and its proffered evidence mirrored the allegations in the petition. The State listed the 10 additional cases pending against defendant and then concluded:

"[ASSISTANT STATE'S ATTORNEY]: In total, the State has eight cases that they have filed for petition on. I can go through the factual basis of all of the cases, but we would state at this time that the Defendant is not only willful flight but he is also dangerous as he poses a threat to the community of committing any type of crime including those with weapons.

The discovery in the State's possession has been tendered to the defense, and we do not believe there is a least restrictive alternative for [defendant]."

¶ 9        After defendant argued that the State had not met its burden of proof in case No. 22-CF-480, the trial court stated that it would take judicial notice of the facts it learned at the consolidated May 2023 preliminary hearing and then explained its conclusions as follows:

"THE COURT: So, based on the facts that came in front of me at the preliminary hearings on those two [(case Nos. 23-CF-316 and 23-CF-317)], [defendant] at this time—and I don't know if it's because of his age—but based on those facts, as well as his history in the judicial delinquency system which he was repeatedly sentenced to Department of Corrections, and he's continued to show absolutely not only no respect for law, but endangering the lives of the community particularly the lives of law enforcement. He needs to be detained."

¶ 10       The trial court then addressed case Nos. 23-CF-316 and 23-CF-317 as follows:

"MR. KHOURY [(DEFENSE ATTORNEY)]: You are only ordering [defendant] detained on [case No. 22-CF-]480?

MS. VILLAREAL [(ASSISTANT STATE'S ATTORNEY)]: I was asking him to be detained on all of them. If the Court would like me to go through all of them, but all of them combined is what would make him a willful flight risk and

also dangerous and is also what helps make him non-probationable which is what the State argued.

MR. KHOURY: I don't think they are detainable offenses though.

THE COURT: I'll detain him on [case No. 22-CF-]480, and if the Appellate Court disagrees we'll have another one detention hearing on [*sic*].

MS. VILLAREAL: Can I have it on the two more recent ones as well?

THE COURT: Yes. Well, are they detainable?

MR. KHOURY: I don't see any other detainable offenses.

MS. VILLAREAL: They can be detainable if we can prove willful flight or dangerousness.

THE COURT: Willful flight, they could be.

MR. KHOURY: What, Judge?

THE COURT: They could be detainable on willful flight.

MR. KHOURY: Yes, I agree with that.

MS. VILLAREAL: Okay.

MR. KHOURY: But was it alleged? Which ones?

THE COURT: I will allow the State to amend their petition based on the facts as I determine them to be, which would show that he is not only a danger to the public but a threat to flight.

MR. KHOURY: Defense objects.

THE COURT: Over your objection.

MR. KHOURY: Thank you.

THE COURT: Noted for the appeal."

¶ 11 The State never filed an amended petition. The trial court denied defendant pretrial release and entered a single detention order in all three cases, finding that the State had met its burden of proof under both the dangerousness and willful flight prongs. In the dangerousness section, the court's written explanation said, "nature of crime, history of defendant, crime allegedly committed while on bond." In the willful flight section, the court's written explanation simply said, "nature of crimes committed while on bond."

¶ 12 Defendant timely filed a single notice of appeal in all three cases on September 18, 2023, utilizing the notice of appeal form in the Article VI Forms Appendix to the Illinois Supreme Court Rules. See Ill. S. Ct. R. 606(d) (eff. Sept. 18, 2023). This form lists several potential grounds for appellate relief and instructs the appellant to "check all that apply and describe *in detail*." (Emphasis added.) Defendant checked the following grounds for relief, with the entirety of counsel's handwritten "detail[s]" being shown here in italics:

"The State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case.

*Insufficient facts alleged in State's proffer*

The State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight.

*Insufficient facts alleged in State's proffer*

The court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings

- 6 -

or prevent defendant from being charged with a subsequent felony or Class A misdemeanor.

 *Insufficient facts alleged by Court and in the State's proffer*

 \*\*\*

 Other (explain).

 *State failed to meet its burden of proving by clear [and] convincing evidence that there is a risk of willful flight*." (Emphases added.)

¶ 13 Defendant's notice of appeal was filed as three separate cases in this court; defendant and the State each filed a memorandum in each case. Because of the significant overlap between the cases, we consolidated them *sua sponte*.

¶ 14         II. ANALYSIS

¶ 15         A. Forfeiture

¶ 16 In addition to arguing the issues raised in his notice of appeal, defendant argues in his memoranda that the State had no authority under the Act to file its verified petitions to deny him pretrial release and that his pretrial detention cannot stand because the statute outlawing aggravated unlawful use of a weapon is facially unconstitutional. These issues were not raised before the trial court or in defendant's notice of appeal, but he argues that we should nevertheless consider them under the doctrine of plain error or because his counsel was ineffective for not moving to strike the State's petition or include the issues in his notice of appeal.

¶ 17 Although defendant argues that plain error should apply here, plain-error review is restricted to errors that are truly "plain," meaning "clear or obvious." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Assuming for the sake of argument that the State's petition to deny pretrial release was improper, that fact was not obvious on the first day the Act was in effect. For that

matter, it was not obvious that defendant could respond by moving to strike the petition or that the trial court had the authority to grant such a motion, as defendant now assumes. The purpose of requiring defendants to raise these matters with the trial court is to allow for proper development of legal precedent regarding a brand-new statute. Because plain-error review applies only to unpreserved errors based on settled precedent, we will not consider these arguments under the plain-error doctrine. See *People v. Williams*, 2015 IL App (2d) 130585, ¶ 11.

¶ 18       Moreover, Rule 604(h), which governs appeals under the Act, states that "[t]he Notice of Appeal shall describe the relief requested and the grounds for the relief requested," and the form notice of appeal prescribed by Rule 606(d) requires the defendant to describe those grounds in detail. Ill. S. Ct. Rs. 604(h), 606(d) (eff. Sept. 18, 2023). "Supreme Court Rules have the force of law. They are not suggestions, nor are they aspirational." *Keefe v. Freedom Graphic Systems, Inc.*, 348 Ill. App. 3d 591, 593 (2004) (citing *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995)). "Although we liberally construe the contents of the notice of appeal, this court does not have authority to excuse compliance with the filing requirements of the supreme court rules governing appeals." *Estate of Young v. Department of Revenue*, 316 Ill. App. 3d 366, 373 (2000); see *People v. Lyles*, 217 Ill. 2d 210, 220 (2005) (noting that this court is not "empowered to take it upon itself to excuse violations of [the] rules regarding appeals \*\*\*, even when the court believes that a failure to follow the rules is due to ineffective assistance of counsel").

¶ 19       No matter how liberally we construe defendant's notice of appeal, it does not encompass these two new issues. It would be especially inappropriate to overlook the insufficiency of defense counsel's rote, mechanical, and nonspecific statements that could be (and in our brief experience, have been) applied generically to any Rule 604(h) appeal. To the extent that the Fifth District's recent opinion in *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 12, suggests that the

clear language of Rule 604(h) can be disregarded by employing plain-error analysis, we disagree. Accordingly, we find that any challenge to the propriety of the trial court's holding of a detention hearing has been forfeited, and we must limit our review to the issues fairly raised by a liberal construction of defendant's notice of appeal: the sufficiency of the State's proffered evidence at the hearing and the trial court's findings, *i.e.*, the "facts alleged by [the] Court," regarding possible conditions of release.

¶ 20                              B. Standard of Review

¶ 21            We review the trial court's findings under the Act for an abuse of discretion. *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11 (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9). "An abuse of discretion occurs when the circuit court's decision is 'arbitrary, fanciful or unreasonable,' or where 'no reasonable person would agree with the position adopted by the trial court.' " *Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 22                              C. Conditions of Release

¶ 23            Defendant's argument that the trial court's findings were insufficient presents a close question because the court listened to the State's proffer, considered arguments by both parties, and explained its findings on the record, which it summarized in its detention order, albeit briefly. With respect to the narrow issue of conditions of release, however, we agree with defendant that the court's findings were insufficient. The court's oral statement that "[defendant] needs to be detained," with no further detail provided in its detention order, falls short of complying with "the clear legislative directive" to address less restrictive conditions of release, a directive that significantly predates the Act. See *People v. Gil*, 2019 IL App (1st) 192419, ¶¶ 15-17 (applying

section 110-6.1(b)(3) of the Code (725 ILCS 5/110-6.1(b)(3) (West 2016)), the prior statute governing no-bond orders).

¶ 24    The practical effect of this error is nontrivial; relying on the same facts four months earlier, the trial court released defendant on a combination of conditions, including the posting of a $25,000 bond deposit. Now, defendant's inability to post monetary bail is irrelevant, and his release has been converted to detention. While the facts underlying the court's decision may well have been sufficient to deny defendant pretrial release on any combination of nonmonetary conditions, we cannot supply the missing conclusion; the Act requires that these matters be addressed by the trial court. See *Gil*, 2019 IL App (1st) 192419, ¶ 17 ("We do not question the power of the circuit court to deny bail, provided the proper procedures are followed and the necessary findings are made. Here, however, neither of those things occurred."). Therefore, the court abused its discretion by failing to "make a record adequate to allow meaningful review of its exercise of discretion." *People v. Ortega*, 209 Ill. 2d 354, 360 (2004).

¶ 25    Finally, we note the trial court's indication that its detention order was effectively a placeholder until this court "disagree[d]" with its decision, at which point the trial court would revisit the matter. If the trial court was uncertain whether its decision would be upheld on appeal, the proper course of action was to provide an explanation of its reasoning, which we would have afforded considerable deference. We cannot, however, defer to considerations the record does not show were made. We are mindful that the Act imposes significant obligations on trial courts, many of which are new, but the availability of prompt appellate review does not diminish the necessity for trial courts to meet those obligations. This is particularly true when it comes to making fact-finding determinations, a role for which appellate courts are not well suited. See *Simmons v. Union Electric Co.*, 104 Ill. 2d 444, 463 (1984) (explaining that reviewing courts are not fact-finding

tribunals). Our own obligation to afford meaningful review under the Act thus relies on the trial court conducting a full and fair evaluation of the evidence and showing its work; otherwise, we cannot "agree" with its detention order.

¶ 26 Accordingly, we reverse the order denying defendant pretrial release and remand with directions for the trial court to promptly set a new detention hearing at which the State can present evidence and the trial court can make the findings required by the Act. See 725 ILCS 5/110-6.1 (West 2022). In light of this disposition, we need not address defendant's challenge to the sufficiency of the State's proffered evidence at the first detention hearing.

¶ 27                                    III. CONCLUSION

¶ 28 For the reasons stated, we reverse the order denying defendant pretrial release and remand with directions for the trial court to promptly set a new detention hearing and conduct further proceedings consistent with this opinion. During the time between the trial court's receipt of this court's mandate and the detention hearing, the trial court will retain the discretion to detain or release defendant. See 725 ILCS 5/110-6.1(c)(2) (West 2022). The mandate in this case shall issue immediately. See *Gil*, 2019 IL App (1st) 192419, ¶ 21.

¶ 29 Reversed and remanded with directions.