2024 IL App (1st) 240038-U

No. 1-24-0038B

Second Division
March 19, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 23 CR 9644 |
| v. | ) | |
| | ) | |
| MALIK PEARSON, | ) ) | Honorable Joanne F. Rosado, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court erred by failing to consider alternatives to detention and failing to adequately state its reasoning, either orally or in writing, as to why lesser restrictive conditions would not mitigate the threat to the community posed by defendant.

¶ 2    Defendant-appellant Malik Pearson appeals from the December 20, 2023 order of the circuit court of Cook County denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/art. 110 (West 2022)), which was

amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act or the Pretrial Fairness Act (Act).[1] See also *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). Specifically, defendant argues on appeal that (1) the State failed to prove that the proof is evident or the presumption great that defendant committed the offenses charged, (2) the State failed to prove that defendant poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case, (3) the State failed to prove that no conditions can mitigate the real and present threat to the safety of persons or the community or defendant's willful flight, and (4) the court erred in its determination that no conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with subsequent offenses. For the following reasons, we vacate the detention order and remand for further proceedings consistent with this order.

¶ 3                                    I. BACKGROUND

¶ 4      Based on an incident occurring on August 15, 2023, defendant was charged with two counts of aggravated vehicular hijacking with a passenger under 16 years of age in the car (720 ILCS 5/18-4(a)(2) (West 2022); three counts of vehicular hijacking (720 ILCS 5/18-3(a)); two counts of unlawful vehicular invasion (720 ILCS 5/18-6(a)); and two counts of unlawful restraint (720 ILCS 5/10-3).

¶ 5      On December 20, 2023, the State filed a petition for a pretrial detention hearing. At the hearing, the State proffered the following facts.

---

[1] "Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1.

¶ 6    On August 15, 2023 at 4:55 p.m. the victim was preparing to leave her mother's house. She pulled her vehicle out of the driveway and onto the street and parked it at the curb to run back and retrieve a bag she had left inside. She left her 11-year-old and 6-year-old children in the running car, as well as her dog. At that time, defendant's juvenile codefendant opened the fron driver's side door and got into the driver's seat of the car causing the children to begin screaming and attempting to get out. However, they could not open the doors from the inside due to child safety locks. The juvenile codefendant began driving off with the children and dog still in the car. The victim ran after the accelerating car and was able to open the car door from the outside, allowing the children and dog to jump out of the moving car. The victim was injured in this effort requiring seven stitches on her head. When the children jumped out, defendant and other codefendants jumped into the car and the driver sped away from the area. Specifically, defendant entered the front passenger seat of the car. The car was tracked via GPS and surveillance video to a gas station, where this defendant, identified by the same clothes he was wearing during the time of his arrest, exited and entered out of the front passenger seat. At 5:22 p.m. Illinois State Police observed the car and began pursuit. The car eventually crashed and the offenders fled on foot from the car but were quickly apprehended, including defendant.

¶ 7    The State also noted that defendant's criminal history consists of a 2020 conviction for residential burglary and a 2020 conviction for possession of a stolen motor vehicle. Both of which resulted in probation and were terminated satisfactorily.

¶ 8    The public safety assessment report submitted to the court showed defendant received a 4 out of 6 on the new criminal activity scale and a 2 out of 6 on the failure to appear scale, and the report stated, if defendant was released, it would recommend maximum conditions.

¶ 9    In response, defense counsel informed the court that defendant was 22 years old and a lifelong resident of Cook County. At the time of his arrest, defendant was living with his mother, sister, and brother, and his mother and sister had been present at every court appearance. Prior to this offense, defendant's stepfather and father died and his sister and mother are his primary sources for support. Counsel further stated that defendant has two children under the age of one year old, graduated from high school in 2021, and has been a member of a church for the past eight years where he has been involved in volunteer work. After high school, defendant attended a tech and trade school. Additionally, defendant has been receiving supportive services for medication management and supplemental security income benefits "based off of having some learning difficulties in life." She noted in regards to defendant's criminal history that he did not have any probation violations.

¶ 10    Counsel continued, stating that, since he has been in custody, defendant has been a participant in the SAVE program, which is the sheriff's anti-violence initiative. Through that program, defendant has received cognitive behavioral therapy and group therapeutic services. Through the jail, defendant has also been involved in educational programming. Based on this information, defense counsel requested that defendant be released on house arrest and noted that he had a location where he could participate in electronic monitoring.

¶ 11    In issuing its ruling, the court recited the factors to be considered in determining dangerousness and found that there was "probable cause to detain in this case" and that the State proved by clear and convincing evidence that the proof is evident and the presumption great that defendant committed the offenses charged and that defendant poses a real and present threat to the safety of persons or the community based upon the specific articulable facts in the record. In particular, the court noted that the proffer shows that children and a dog were in the vehicle that

was stolen and there was surveillance video from which defendant is identified as getting into the vehicle as the minor children were being pulled out by their mother. The court further found that there is no condition or combination of conditions of pretrial release that can mitigate defendant's threat to safety. Finally, the court stated that this was "a crime of opportunity which puts the entire community at risk."

¶ 12    On December 20, 2023, the court entered an order finding that the State proved by clear and convincing evidence that the proof is evident or the presumption is great that defendant committed the offense of aggravated vehicular hijacking, which is an eligible offense under section 110-6.1(a)(1)-(7), and defendant poses a real and present threat to the safety of persons or the community based on the specific articulable facts of the case. In particular, the court specifically found that defendant, along with codefendants, took a vehicle with two minor children and a dog inside and the mother, in attempting to stop the vehicle, was injured and received stitches. The court further found that no conditions can mitigate the safety threat based on the specific articulable facts of the case, and less restrictive conditions would not avoid a threat to safety, stating specifically that defendant is a risk to the community at large as this was a crime of opportunity, he attempted to get in the vehicle with minor children, and he is seen on surveillance matching the description and the vehicle was found within 30 minutes. As such, the court ordered defendant to be detained and remanded to the custody of the Cook County sheriff pending trial.

¶ 13    This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15    We first note that defendant has chosen not to file an appellant's memorandum and has instead opted to stand on the points raised in his notice of appeal. See Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023) (appellant may file, but is not required to file, a memorandum on appeal). On the

preprinted notice of appeal form, defendant has checked the boxes indicating that the State has failed to meet its burden of proof on each of the three requirements described above, as well as the box indicating that the trial court erred in its determination that no conditions would reasonably ensure the appearance of defendant at further court hearings or prevent him from being charged with additional offenses. Additional support for his arguments is set out below these preprinted statements and in his notice in lieu of memorandum. In considering this appeal, we have reviewed the following documents that were submitted pursuant to Rule 604(h): the supporting common law record, report of proceedings, defendant's notice of Pretrial Fairness Act appeal, notice in lieu of memorandum, and the State's response memorandum. Although we ultimately reverse and remand for the trial court's lack of compliance with the Code, we address each of defendant's arguments in turn. But see *People v. Rivas*, 2024 IL App (1st) 232364-U (reversing and remanding, without addressing the defendant's other arguments on appeal, where the State conceded that the trial court's detention order failed to comply with the Code); *People v. Bond*, 2024 IL App (2d) 230536-U, ¶ 11 (stating that, where the third requirement for detention regarding less restrictive conditions was not met, the defendant's arguments regarding the first two requirements were rendered moot and were not addressed).

¶ 16                    A. Pretrial Release Statutory Provisions

¶ 17    Pretrial release in Illinois is now governed by article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by the Act. The Act abolished the requirement for monetary bail (725 ILCS 5/110-1.5) and provides the process for pretrial release (*id.* § 110-5). The Code presumes that all defendants are eligible for pretrial release and places the burden of justifying pretrial detention on the State. *Id.* § 110-6.1(e). Under this article, a

defendant's pretrial release may only be denied in certain limited circumstances. See *id.* § 110-2(a).

¶ 18    The State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (725 ILCS 5/110-6.1(e)(1)), (2) the defendant's pretrial release poses a real and present threat to the safety of any persons or the community (*id.* § 110-6.1(a)(1)-(7), (e)(2)) or a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8), (e)(3)), and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any persons or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)). Notably, here, there is no dispute that the offenses with which defendant is charged are qualifying detainable offenses.

¶ 19    The Code also mandates that the circuit court's decision regarding release, conditions of release, and detention prior to trial "must be individualized." *Id.* § 110-6.1(f)(7). The court's decision must be set forth in a detention order, summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent defendant's willful flight from prosecution. *Id.* § 110-6.1(h).

¶ 20                                    B. Standard of Review

¶ 21    Before reaching the merits of defendant's arguments as to why he should have been granted pretrial release, we must first address the standard of review.

¶ 22    Since the amended Code took effect, the proper standard of review has been the topic of much debate among the appellate districts, and even among different divisions here in the First District. Some courts have held that all aspects of detention hearings under the amended Code

should be reviewed for abuse of discretion. *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18; *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10; *People v. Bradford*, 2023 IL App (1st) 231785, ¶ 33. Others have held that the circuit court's findings should be reversed only if they are against the manifest weight of the evidence. *People v. Pitts*, 2024 IL App (1st) 232336 ¶ 29; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12. Still others have adopted a mixed approach whereby (1) the circuit court's findings on whether the defendant committed a detainable offense and whether the defendant posed a danger to the community are reviewed under the manifest weight standard, but (2) the ultimate determination on whether to grant or deny pretrial release is reviewed for abuse of discretion. *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 31-36; *People v. Hodge*, 2024 IL App (3d) 230543, ¶ 8; *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. One justice has endorsed a *de novo* standard, at least when the circuit court hears no live testimony and relies solely on documentary evidence. *Saucedo*, 2024 IL App (1st) 232020, ¶ 122 (Ellis, J., specially concurring).

¶ 23     We need not decide the standard of review here, however, because our conclusion would be the same under any standard.

¶ 24                     C. Evidence of the Offenses

¶ 25     We first address whether the proof is evident or the presumption great that defendant committed the crimes charged.

¶ 26     The State is required to prove by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense charged. Clear and convincing evidence is "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." (Internal quotation marks omitted.) *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12. The Code also explains that the "State or defendant may

present evidence at the hearing by way of proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2).

¶ 27    Defendant argues that the State's proffer failed to show that "any witness identified [him], that he made no inculpatory statements, and that there is no forensic evidence" tying him to the crime, and thus, failed to prove the presumption great or proof evident that defendant committed the offenses charged. We disagree.

¶ 28    Initially, we point out that the State is not required at this particular proceeding to produce the surveillance video recording. The State's proffer only needs to be based on reliable information. See 725 ILCS 5/110-6.1(f)(2). In the instant case, we find that the State's proffer contained sufficient identifying information for the court to reasonably find that the proof is evident or the presumption great that defendant was an active participant in the crime that took place on August 15, 2023. See *Bradford*, 2023 IL App (1st) 231785, ¶ 32 ("clear and convincing evidence" requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt). Specifically, the State proffered that there was surveillance footage of individuals exiting the car at a gas station, which was the first stop after the hijacking occurred, and defendant, who fled on foot after the car crashed and was quickly apprehended, matched the description taken from that footage. The State indicated that the surveillance footage was from the gas station and the car was tracked there via GPS. Given this proffer, there is no need for inculpatory statements or physical evidence. Without expressing any opinion as to whether the State can prove the charges beyond a reasonable doubt, we find no error in the court's determination that the State satisfied its burden of proof as to this requirement.

¶ 29                              D. Dangerousness

¶ 30    Defendant next argues that the State failed to prove that defendant "poses a real and present threat to the safety of any person or persons in the community" based on the specific articulable facts of the case. Specifically, defendant contends that there were no allegations that he "used or threatened the use of force," no allegations that he injured anyone or possessed a weapon, and his role in this crime was only entering the stolen vehicle "subsequent to the hijacking," and he was not on parole, probation, or any court supervision at the time of the offense.

¶ 31    In determining whether a defendant poses a real and present threat to the safety of any person or the community, the court may, but is not required, to consider the following non-exhaustive list of relevant factors: (1) the nature and circumstances of the charged offense, including whether the offense was a crime of violence or a sexual offense; (2) the history and characteristics of the defendant, especially criminal history indicative of violent or abuse behavior; (3) the identity of any person to whom the defendant may pose a threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding them; (5) the defendant's age and physical condition; (6) the victim's age and physical condition; (7) whether the defendant is known to possess or have access to weapons; (8) whether the defendant was on probation, parole, or other form of supervised release at the time of the alleged offense, (9) any other factors listed in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)). 725 ILCS 5/110-6.1(g)(1-9).

¶ 32    In the case before us, after hearing from both parties, the court recited the statutory factors and then explained that the proffer showed that a car was stolen and there were children in the car, as well as a dog, and the children's mother was injured chasing after the car, requiring stitches on her head. The court further stated that regardless of defendant seeing the children and dog jumping out of the moving vehicle, he continued to get into it and participate in the crime. The court

described the incident as a crime of opportunity that puts the whole community at risk. For the following reasons, we find that the court reasonably found that the State met its burden to show by clear and convincing evidence that defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e)(2).

¶ 33    Some of these factors weigh in defendant's favor, such as the absence of evidence that defendant used a weapon during this crime and the fact that defendant was not on probation, parole, or other supervision at the time of the offense. However, despite the fact that a weapon was not used in the commission of the offense, the offense was nonetheless serious where two of the victims involved were children, who likely suffered emotional trauma due to this incident. Additionally, the mother of the children was injured as a result of this crime and required stitches on her head. We also reject defendant's assertion that he should be treated differently because the State's theory of the case largely rests on accountability where defendant did not initiate the hijacking and only joined as a participant after the children and dog escaped. Defendant jumping into the car as the children and dog were escaping and after observing their mother chase after the car demonstrates, at the very least, his disregard for the safety of others. Thus, the nature and circumstances of the offense, as well as the characteristics of the victims, weigh in favor of finding that defendant posed a threat to the community.

¶ 34    Moreover, even though defendant was not on probation at the time, his criminal history showed that he was convicted of residential burglary and possession of a stolen motor vehicle only a few years prior to this incident. Neither of those crimes, on their face, indicate violent behavior; however, in combination with the offenses charged here, they demonstrate recidivist tendencies

and a pattern of participating in crimes of opportunity. Under these circumstances, we cannot say that the court erred in finding that defendant posed a real and present danger to the community.

¶ 35                                    E. Conditions on Release

¶ 36    Lastly, we consider defendant's assertion that the State did not satisfy its burden of proof that no set of conditions could prevent the threat to the safety to individuals or the community. In his notice in lieu of memorandum, defendant specifically contends that "there was no indication of previous dangerousness or failures to appear" and "he was not flagged by pretrial services as a risk for new violent criminal activity." He further alleges that "the State made no mention of conditions or made any arguments regarding conditions at all" and that the "court only repeated the allegations and the statutory language of the required ruling, while repeating the basis for its finding of dangerousness, to wit the allegations of the underlying offense."

¶ 37    Under the Code, the State must show by "clear and convincing evidence" that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the defendant's willful flight. 725 ILCS 5/110-6.1(e)(3). The Code directs the court to consider the conditions set forth in section 110-10 and the court may also impose other reasonable conditions. See *id.* § 110-6.1(e)(3); *id.* § 5/110-10(b). Further, the court is required to set forth in a detention order the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent defendant's willful flight from prosecution. *Id.* § 110-6.1(h). For the following reasons, we conclude that these requirements were not met in this case where the circuit court failed to address the potentiality of less restrictive conditions upon release for defendant and failed

to summarize its reasoning for finding that less restrictive conditions would not mitigate the threat posed by defendant.

¶ 38    Here, the record shows that, in addition to its factual proffer regarding the alleged offenses, the State provided the court with defendant's scores on the pretrial assessment, which showed that he scored a 2 out of 6 for failure to appear and a 4 out of 6 for new criminal activity and recommended that, if released, the maximum conditions be imposed. The State also informed the court of defendant's criminal history, namely 2020 convictions for burglary and possession of a stolen vehicle. Defendant specifically requested electronic monitoring and identified a feasible location for that condition. The circuit court did not address defendant's request for electronic monitoring or any other alternative to detention in its ruling, contrary to the requirements set forth in the Code.

¶ 39    The court's handwritten reasoning on this issue states: "The defendant is a risk to the community at large as this was a crime of opportunity, he attempted to get in the car with the minor children and drive away, he is seen on surveillance video matching the description, and the vehicle is tracked [within] 30 [minutes]." The court's oral pronouncement was no different. Neither the oral nor the written findings adequately addressed why any conditions would not mitigate the risk if released. See *People v. Andino-Acosta*, 2024 IL App (2d) 230436, ¶ 19 (stating that the circuit court's written findings must be read in conjunction with its oral statements). The court merely summarized the State's proffer and noted that defendant is a risk to the community. Although these findings are relevant for determining that defendant poses a risk to the safety of the community, it does not explain why that risk cannot be mitigated with conditions such as electronic monitoring, which defendant requested. "Failure of the circuit court to address these conditions falls short of the 'clear legislative directive' for courts to address less restrictive conditions of release." *People*

*v. Castillo*, 2024 IL App (1st) 232315, ¶ 29 (quoting *People v. Martin*, 2023 IL App (4th) 230826, ¶ 23). Because there is no indication from the record that the circuit court considered less restrictive conditions and the court's reasoning as to why such conditions would not be effective is absent, this court has failed to comply with the Code's requirements in denying pretrial release. See *People v. Peralta*, 2023 IL App (1st) 231897, ¶ 13 (finding the court's explanation for the less restrictive conditions requirement to be insufficient and remanding for the court to consider the possibility of less restrictive conditions and explain why such alternatives would or would not be effective); *People v. Turner*, 2024 IL App (1st) 232082-U, ¶ 23 (reversing and remanding where the circuit court did not consider alternatives and its detention order did not comply with the Code); *People v. Kimberley*, 2024 IL App (1st) 232170-U, ¶ 32 (finding that the court's written order did not indicate that it considered any alternatives to detention and remanding for entry of an appropriate order that complies with the Code). Additionally, this failure also results in an inadequate record for meaningful review of the court's decision. See *Martin*, 2023 IL App (4th) 230826, ¶ 29.

¶ 40    Accordingly, we vacate the circuit court's detention order and remand to the circuit court for compliance with the Code, specifically to consider alternatives to detention and to make individualized findings explaining why less restrictive conditions would or would not avoid a real and present threat of safety to the community based on the specific articulable facts of the case. We express no opinion on what the circuit court's ruling on this matter should be.

¶ 41    As a final note, we need not address defendant's fourth claim that "[t]he court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor." We note that that preprinted statement is language taken from the section of the Code related to revocation of pretrial release or modification of

conditions of release. See 725 ILCS 5/110-6(a), (j). That language is not found in the section governing denial of pretrial release, which is at issue in this case. See 725 ILCS 5/110-6.1. The court did not make such a finding and was not required to do so under the Code for denial of pretrial release. See *Castillo*, 2024 IL App (1st) 232315, ¶ 34, n.1.

¶ 42                                III. CONCLUSION

¶ 43    For the reasons stated, we vacate the judgment of the circuit court and the cause is remanded for further proceedings consistent with this order.

¶ 44    Vacated and remanded.